Opinion of the Court, by
Judge Logan.
Joseph Brooks, having a lease on Mann’s Lick, sold the same to Thomas Smith, and received in payment Smith’s bond for 1,000 bushels of salt. Smith afterwards disposed of his interest in the lease, together with the use of certain kettles, &c. to Thomas Carneal, for which Carneal agreed to pay 2,000 bushels of salt; and Carneal thereafter tranferred back to Brooks the same inferest, who covenanted to pay him, in consideration thereof, 1,000 bushels of salt in Lexington.
Subsequent to these several contracts, Carneal, expecting a settlement with Smith, in order to enable him the more fully to meet it, applied to, and obtained from Brooks the bond on Smith for the 1,000 bushels of salt, with Brooks’ name endorsed thereon, that Carneal might, if necessary, assign the bond to himself; but if he should not want to make use of the bond in the settlement with Smith, in that case to return it to Brooks; and a settlement not having been then made, Carneal accordingly returned the bond.
After this, about the year 1794, Carneal and Smith again entered into a settlement of their accounts; and in that settlement, it becomes a material question in *165 this cause, whether Brooks’ bond on Smith formed one of its items. Smith, contending that it did, has enjoined a judgment at law obtained by Brooks on said bond, and on that ground succeeded on the final hearing of the cause; but pending the suits between Brooks and Smith, Carneal procured a settlement with Brooks, in which no notice was taken of Smith’s bond. Upon that settlement Brooks fell in Carneal’s debt 860 bushels and 10 pounds of salt, and passed his note, bearing date the 13th of February 1797, for that quantity, as the balance due to Carneal, which he agreed to pay for in specie, at three dollars per bushel, with interest from the date. Upon this writing Carneal commenced suit, and recovered judgment against Brooks for £812 15s. 9d. and costs; to enjoin which, Brooks exhibited his bill, alleging that Carneal had received the amount of Smith’s bond, and had failed to account for it.
Before we proceed with the examination of the merits of this cause, it becomes necessary to decide, whether a court of chancery can entertain jurisdiction of the case. It is relied on in the defence, that the matter set forth in the bill was properly cognizable at law, and ought not, therefore, to be relieved in equity.
If Carneal, on his settlement with Smith, received a credit for the amount of that bond, and concealed the fact in his subsequent settlement with Brooks, he acted fraudulently; and a court of equity would entertain concurrent jurisdiction with a court of law, in giving relief. Upon this ground, then, chancery would take jurisdiction of the present case, unless it appeared that the complainant had availed himself of the defence at law. The complainant charges in his bill, that he offered the special matter, or the substance thereof, in his defence, by way of plea in the action at law; but the court rejected the plea. This is not denied in the defendant’s answer. And it does not seem material to decide whether the special matter could have been given in evidence under the general issue; since, if it could not have been, then there can be no doubt that the case is relievable in equity. And if it could have been given in evidence under the plea of non-assumpsit, as the party pleading the general issue might only intend a defence under it purely legal, and applying to the gist of the action as laid in the declaration, and not have expected or intended the introduction of evidence *166 appertaining to fraud, or to matter suppressed in the formation of the contract, under that plea, it seems to follow, therefore, that he could not thereby be barred of his remedy in equity on that branch of his defence, giving concurrent jurisdiction both to law and equity, unless he had really enjoyed the benefit of it in the trial at law.
We come next to consider whether Carneal received a credit with Smith in their settlement, for the amount of the bond given by Smith to Brooks.
That Brooks has lost the benefit of the bond as against Smith, on the presumption that Smith had credited Carneal with the amount of it in their settlement, admits of no doubt. But whether Carneal received the benefit of the bond in his settlement with Smith, on Which ground only he can be made chargeable therewith, is the proper question now for inquiry. And in this examination Brooks’ failure in the suit with Smith, will certainly form no weight against Carneal, he not being a party in that suit.
Carneal, in his answer, denies that he had credit with Smith for that bond, in positive terms. To support the allegations in the complainant’s bill, the depositions of Robert Breckinridge and Abraham Hite, are the most material in the cause, and in substance, are as as follows: Breckinridge deposeth, that in the spring of the year 1794, as well as he can recollect, Carneal applied to him in Lexington to assist in adjusting some accounts between Smith and himself; from which, and their conversation, it appeared that Carneal owed Smith a considerable quantity of salt. That Carneal produced an account against Smith, by which it appeared that the salt due Smith, was balanced as satisfactory to each party, by taking into the account about £100, which Carneal then tendered to Smith. Upon an examination of the account and vouchers in support of it, Smith asked Carneal for a bond for 1,000 bushels of salt, which appeared to be charged in Carneal’s account. He replied that the bond should be delivered at some other time. Smith then replied, that as they were about to make a settlement of their accounts, that was as proper a time as any other. Upon which Carneal left the room, and as the witness thought, with an intention to bring the bond; but returned without it. Smith then informed him he might put up the money, that he would not receive it without the bond. Carneal seemed embarrassed, and informed Smith that he would deliver it. The bond in question was, as well as he recollects, one executed by Smith to Joseph Brooks. He is not certain that the bond was charged in the account exhibited against Smith; but he well recollects that Smith called on Carneal to deliver it, as a matter he seemed to claim, and Carneal bound to deliver. Smith quit the room, and no settlement was then made; but on the next morning Smith agreed to receive the money and rely on Carneal to deliver the bond. That he saw Smith sign a writing, which he thinks was a receipt in favor of Carneal, intended as a discharge against all demands, except the said bond, which he thinks was mentioned in the receipt, and the receipt was lodged with Mr. Brent of Lexington, to be delivered to Carneal, with whom Carneal had left the £100, and from whom Smith received it. Carneal, in his answer, denies that he had credit with Smith for that bond, in positive terms. To support the allegations in the complainant’s bill, the depositions of Robert Breckinridge and Abraham Hite, are the most material in the cause, and in substance, are as as follows: Breckinridge deposeth, that in the spring of the year 1794, as well as he can recollect, Carneal applied to him in Lexington to assist in adjusting some accounts between Smith and himself; from which, and their conversation, it appeared that Carneal owed Smith a considerable quantity of salt. That Carneal produced an account against Smith, by which it appeared that the salt due Smith, was balanced as satisfactory to each party, by taking into the account about £100, which Carneal then tendered to Smith. Upon an examination of the account and vouchers in support of it, Smith asked Carneal for a bond for 1,000 bushels of salt, which appeared to be charged in Carneal’s account. He replied that the bond should be delivered at some other time. Smith then replied, that as they were about to make a settlement of their accounts, that was as proper a time as any other. Upon which Carneal left the room, and as the witness thought, with an intention to bring the bond; but returned without it. Smith then informed him he might put up the mo *167 ney, that he would not receive it without the bond. Carneal seemed embarrassed, and informed Smith that he would deliver it. The bond in question was, as well as he recollects, one executed by Smith to Joseph Brooks. He is not certain that the bond was charged in the account exhibited against Smith; but he well recollects that Smith called on Carneal to deliver it, as a matter he seemed to claim, and Carneal bound to deliver. Smith quit the room, and no settlement was then made; but on the next morning Smith agreed to receive the money and rely on Carneal to deliver the bond. That he saw Smith sign a writing, which he thinks was a receipt in favor of Carneal, intended as a discharge against all demands, except the said bond, which he thinks was mentioned in the receipt, and the receipt was lodged with Mr. Brent of Lexington, to be delivered to Carneal, with whom Carneal had left the £100, and from whom Smith received it.
Hite deposeth, that he was in Lexington the day after the settlement of the said accounts, and that the day after the terms of settlement had been agreed on, Smith informed him of those terms; that Carneal was to pay him £100, and give up the bond for 1,000 bushels of salt, which he had given to Brooks; and said that Carneal had left the money, and was to have sent in the bond that day, but had not done it; that he wanted the money, but did not like to give a receipt in full unless he got the bond; that he then advised him to make an exception in the receipt of that bond; and a receipt was accordingly written, which Smith signed, and the £100 was paid to him.
The production of that receipt, would very probably have thrown some light on the present question. The depositions, however, seem to admit of no doubt, with regard to Carneal’s having received a credit for that bond in his settlement with Smith.
We are, therefore, of opinion that Brooks is entitled to a credit with Carneal for said bond, estimating the salt at $2 per bushel, which is proved to have been the price of salt at that time; and also to interest on the amount of said bond at the rate of five per cent. per annum, from the time Brooks passed his note to Carneal, payable with interest from the date, to wit, the 13th of February 1797, until rendering judgment on the note the 12th day of May 1798; That the injunction should *168 for these sums have been made perpetual, and for the amount of the costs in the suit in chancery; and as to the balance, dissolved, and the bill for so much dismissed. With regard to other credits, it either does not appear sufficiently satisfactory that they were not given or offered in the action at law, or we deem them untenable.-Decree reversed.